UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSE G. BARAJAS GOMEZ,

                              Petitioner,

        v.

DAN WHITE,

                              Respondent.

Case No. C22-5897-MJP-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jose Barajas Gomez is a state prisoner who is currently confined at the Monroe Correctional Complex – Twin Rivers Unit, in Monroe, Washington. Petitioner has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2020 Thurston County Superior Court judgment and sentence. (Pet. (dkt. # 5).) Respondent filed an answer to the petition and submitted relevant portions of the state court record. (Answer (dkt. # 13); State Ct. Rec. I (dkt. # 14-1); State Ct. Rec. II (dkt. # 14-2).) Petitioner filed a response to Respondent's answer. (Pet.'s Resp. (dkt. # 15).) This Court, having reviewed the petition, all briefing of the parties, and the balance of the record, concludes that Petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.    FACTUAL/PROCEDURAL BACKGROUND

### A.    Factual Background

In February 2019, the Washington State Patrol's ("WSP") Missing and Exploited Children Task Force conducted a "Net Nanny Operation" in Thurston County, Washington. (*See* State Ct. Rec. II, Ex. 17 at 81-82, 114-117.) A Net Nanny Operation is an undercover operation designed to find people online who are interested in having sex with children. (*See id.* at 105.) The Net Nanny Operation conducted in this case involved a WSP detective who adopted an undercover persona as a 13-year-old female named Sam and created a profile for Sam on a dating app called Badoo. (*Id.* at 117-121.) Petitioner began communicating with Sam online by sending messages through Badoo, and they subsequently began exchanging text messages outside the Badoo app. (*See id.* at 117, 123, 135.)

In the early stages of Petitioner and Sam exchanging text messages, Sam indicated to Petitioner that she was 13 years old and that she was staying with a friend in Olympia.[1] (State Ct. Rec. II, Ex. 17 at 142-43.) Petitioner thereafter requested a photograph of Sam, asked her if she liked older guys, and asked if she had previously had sex with an older guy. (*Id.* at 143-44.) Petitioner also asked Sam if she liked oral sex and was on birth control before sending her a series of sexually explicit messages. (*Id.* at 145-48.) Petitioner then asked Sam the age of the friend she was staying with and, when Sam indicated the friend was 12, Petitioner asked if the friend liked older guys. (*Id.* at 149.) Petitioner thereafter asked if both Sam and her 12-year-old friend wanted to have sex, and he described having sex with both of them. (*See id.* at 154-57.)

As the conversation continued, Sam and Petitioner discussed arranging a meeting at the house where Sam was staying with her 12-year-old friend. (State Ct. Rec. II, Ex. 17 at 154-57.)

---

[1] Petitioner also adopted an alternate persona as "Jesus." (*See* State Ct. Rec. II, Ex. 17 at 142.)

REPORT AND RECOMMENDATION
PAGE - 2

Petitioner asked for an address to the house, but Sam declined to give it to him, providing an address for a store instead that she indicated was down the street from the house. (*Id*. at 157-58, 160-61.) Petitioner indicated he was on his way, but thereafter advised that he had had car trouble and was stuck on the freeway. (*Id*. at 162-66.) The planned meeting therefore never took place, but Petitioner suggested they could meet another time. (*Id*. at 164-66.) Petitioner also asked Sam for the phone number for Audrey, Sam's fictitious 12-year-old friend, but Sam refused to provide it. (*See id*. at 164-65.)

Petitioner continued texting with Sam during the ensuing days, exchanging more sexually explicit messages and trying to arrange another time to meet. (*See* State Ct. Rec. II, Ex. 17 at 166-79.) Petitioner also persevered in his attempts to obtain Audrey's phone number from Sam, and Sam eventually gave it to him. (*Id*. at 179-81.) Petitioner then began texting Audrey as well, and those conversations were also sexually explicit. (*See id*. at 181-82, 241, 243.) Arrangements were eventually made for Petitioner to meet both of the girls for sex, and he was again given the address of the store that was purportedly near Audrey's house. (*Id*. at 190-92.) Petitioner was arrested in the vicinity of the store. (*See id*. at 222-23.)

Petitioner was thereafter charged with two counts of communication with a minor for immoral purposes and two counts of attempted rape of a child in the second degree. (*See* State Ct. Rec. II, Ex. 16 at 50-51.) Petitioner proceeded to trial on those charges in late-February 2020. (*See id*., Ex. 16.) The state presented the testimony of six witnesses over the course of three days and the parties thereafter rested with the defense presenting no witnesses. (*See id*., Ex. 17 at 87-352.) The jury began its deliberations on the morning of March 3, 2020. (*See id*., Ex. 18.)

On the first day of deliberations, the jury sent a question to the court asking how they should proceed as they had reached agreement on two charges but were "hung" on the other two

charges. (*See* State Ct. Rec. II, Ex. 18 at 10; *see also* Pet. at 61.) After discussing the matter with counsel, the court called the presiding juror into the courtroom and inquired of her whether there was "a reasonable probability of the jury reaching an agreement within a reasonable time as to all counts." (State Ct. Rec. II, Ex. 18 at 14.) The juror responded by stating "I'm not sure. If I have to guess, I'd say no." (*Id*.) The court then confirmed with the juror that she was "not sure." (*See id*.) Once the presiding juror left the courtroom, the court again inquired of counsel. The prosecutor suggested at that time that they could bring the jury back in, accept the verdicts as to the two counts upon which they were able to agree, and declare a mistrial with respect to the remaining two counts. (*Id*. at 15.)

After a break was taken to allow defense counsel to confer with Petitioner, counsel represented to the court that they would prefer the jury continue to deliberate. (*See* State Ct. Rec. II, Ex. 18 at 16-17.) The prosecutor thereafter indicated to the court that she agreed with defense counsel that deliberations should continue. (*Id*. at 17.) The court then provided the jury with a written response advising that they should leave for the day and begin again the following day by re-reading the instructions and then continuing to deliberate. (*See id*. at 17-18; *see also* Pet. at 61.)

On the second day of deliberations, the jury advised the court that it had reached verdicts in the case. (State Ct. Rec. II, Ex. 18 at 22.) The jury returned to the courtroom and the court read the verdicts, which reflected guilty findings on all four charges. (*See id*. at 22-23.) However, when the clerk polled the jury, one of the jurors advised that the verdicts reached by the jury were not her verdicts. (*See id*. at 24-26.) The jury was sent out, the court conferred with counsel, and the jury was then brought back into the courtroom at which time the court advised that it was

REPORT AND RECOMMENDATION
PAGE - 4

returning the instructions and verdict forms to them and that they should re-read the court's

instructions and deliberate consistent with those instructions. (*Id*. at 26-34.)

Later that afternoon, the jury sent a question to the court asking again how they should

proceed as they had reached agreement on three charges but did not have agreement on the

remaining charge. (*See* State Ct. Rec. II, Ex. 18 at 36; *see also* Pet. at 63.) After conferring with

counsel, the court provided the jury with a written response advising that they should complete

the verdict forms for the counts upon which they agreed and write "cannot decide" on the verdict

form for the count upon which they did not unanimously agree. (*See* State Ct. Rec. II, Ex. 18 at

37-39; *see also* Pet. at 63.) The jury thereafter returned to the courtroom and the verdicts were

read. (*See* State Ct. Rec. II, Ex. 18 at 41-42.) The verdicts reflected guilty findings as to one

count of attempted rape of a child in the second degree and two counts of communication with a

minor for immoral purposes. (*See id*.) Pursuant to the stipulation of counsel, the trial court

declared a mistrial as to the remaining count of attempted rape of a child in the second degree.

(*See id*.)

On May 28, 2020, Petitioner appeared for sentencing at which time the court imposed a

minimum term of 109.5 months confinement and a maximum term of life with respect to the

charge of attempted rape of a child in the second degree. (*See* State Ct. Rec. I, Ex. 1 at 5; State

Ct. Rec. II, Ex. 18 at 70-71.) The court also imposed terms of 29 months confinement on each of

the two charges of communicating with a minor for immoral purposes, which were to run

concurrently with each other and with the sentence imposed on the more serious charge. (*See id*.)

Finally, the court dismissed the count upon which it had previously declared a mistrial. (*See*

State Ct. Rec. I, Ex. 1 at 4; State Ct. Rec. II, Ex. 18 at 70.)

REPORT AND RECOMMENDATION
PAGE - 5

**B.    Procedural Background**

Petitioner appealed his sentence to the Washington Court of Appeals, but he challenged on appeal only one of the conditions of community custody imposed by the trial court. (*See* State Ct. Rec. I, Exs. 2-4.) The state conceded the error, and the Court of Appeals reversed with respect to the challenged condition and remanded the matter to the trial court to modify that condition. (*See id.*, Ex. 2.). The Court of Appeals issued a mandate terminating direct review on July 1, 2021. (*Id.*, Ex 5.)

On January 10, 2022, Petitioner filed a personal restraint petition in the Washington Court of Appeals. (*See* State Ct. Rec. I, Ex. 8.) Petitioner asserted therein various ineffective assistance of trial counsel claims. (*See id.*) Petitioner also asserted that the trial court erred when it limited the jury's review of evidence during deliberations, and when it impermissibly interfered with the verdict and coerced the jury into reaching a verdict on a more serious charge. (*See id.*) Finally, Petitioner asserted that the trial court applied the wrong seriousness level in imposing sentence for his conviction on the charge of attempted rape of a child in the second degree. (*See id.*)

On June 9, 2022, the Court of Appeals issued an Order dismissing Petitioner's personal restraint petition as frivolous. (*See* State Ct. Rec. II, Ex. 10.) Petitioner thereafter filed a motion for reconsideration, which was treated as a motion for discretionary review by the Washington Supreme Court. (*Id.*, Ex. 11.) On August 26, 2022, the Supreme Court Commissioner issued a ruling denying review. (*Id.*, Ex. 12.) Petitioner filed an objection to the Commissioner's ruling, which was treated as a motion to modify that ruling and was denied on November 9, 2022. (*See id.*, Exs. 13-14.) The Court of Appeals issued a certificate of finality in Petitioner's personal

restraint proceedings on December 9, 2022. (*Id.*, Ex. 15.) Petitioner now seeks federal habeas review of his state court convictions and sentence.

### III. GROUNDS FOR RELIEF

Petitioner identifies four grounds for relief in his federal habeas petition, which the Court has summarized as follows:

1.  Trial counsel rendered ineffective assistance when he failed to accept the jury's first verdict and failed to move for a mistrial based on jury misconduct. (*See* Pet. at 5-41.)

2.  The trial court abused its discretion when it failed to declare a mistrial based on juror misconduct and when it interfered with the jury's deliberations and coerced the jury into changing their initial verdict to one which allowed the court to impose a harsher sentence. (*See id.* at 43.)

3.  Trial counsel rendered ineffective assistance when he coerced Petitioner into not testifying, advised Petitioner to stop taking his medications prior to trial, and refused to present an entrapment defense. (*See id.* at 44-50.)

4.  The trial court erroneously applied a seriousness level of XI to the offense of attempted rape of a child in the second degree when the appropriate seriousness level was III, as that level more accurately reflected the conduct underlying the offense. (*See id.* at 52-56.)

### IV. DISCUSSION

Respondent concedes that Petitioner has properly exhausted his federal habeas claims by fairly presenting them to the Washington Supreme Court as federal claims. (*See* Answer at 5.) Respondent argues, however, that Petitioner is not entitled to relief with respect to any of his asserted claims. (*See id.* at 6-24.)

#### A. Federal Habeas Standard, 28 U.S.C. § 2254

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if

REPORT AND RECOMMENDATION
PAGE - 7

(1) the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta.

REPORT AND RECOMMENDATION
PAGE - 8

*Id.* at 71. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"). The federal habeas court presumes the state court's factual findings to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

**B.    Analysis**

*1.    Ineffective Assistance of Counsel*

Petitioner asserts claims of ineffective assistance of counsel in both his first and third grounds for relief. (*See* Pet. at 5-41, 44-50.) In his first ground for relief, Petitioner asserts that he was denied effective assistance of counsel when his trial counsel failed to heed his instruction to "accept" the jury's first verdict, which he characterizes has having "offer[ed]" guilty verdicts on the two lesser charges and "hung" verdicts on the remaining two more serious charges. (*See id.* at 5.) Petitioner also asserts that counsel rendered ineffective assistance when he failed to move for a mistrial after the presiding juror lied to the court and presented false verdict forms. (*Id.*) In his third ground for relief, Petitioner asserts that he was denied effective assistance of counsel when

trial counsel coerced him into not testifying, instructed him to stop taking his medications prior to trial, and refused to present an entrapment defense. (*See* Pet. at 44.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

REPORT AND RECOMMENDATION
PAGE - 10

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

The Washington appellate courts evaluated Petitioner's ineffective assistance of counsel claims on collateral review in accordance with the *Strickland* standard and rejected all such claims. (*See* State Ct. Rec. II, Exs. 10, 12.) This Court addresses each of Petitioner's ineffective assistance claims individually below.

a.    Jury Deliberations

Petitioner's first ineffective assistance claim concerns his trial counsel's conduct in relation to jury deliberations. (*See* Pet. at 5-41.) In particular, Petitioner complains that counsel failed to heed his instruction to "accept" the jury's first verdict and failed to move for a mistrial when the presiding juror erroneously reported to the court that the jury had reached a verdict on all counts. (*Id*.) These claims are intertwined with Petitioner's claims, asserted in ground two of his petition, that the trial court interfered with jury deliberations and coerced the jury into finding

him guilty on more serious charges, and that it failed to declare a mistrial when the presiding juror lied to the court. (*See id*. at 43.) As will be explained in greater detail below in the Court's discussion of ground two, Petitioner's claim that the trial court effectively coerced the jury into finding Petitioner guilty on more serious charges that carried a lengthier sentence is without merit. Petitioner's related ineffective assistance of counsel claim likewise fails.

The Washington Court of Appeals, in rejecting this portion of Petitioner's ineffective assistance of counsel claim, concluded that counsel's actions in relation to the jury deliberations constituted a strategic decision and therefore did not amount to ineffective assistance. (*See* State Ct. Rec. II, Ex. 10 at 3 n.2.) The Court of Appeals' conclusion was eminently reasonable.

Petitioner faults counsel for indicating that the defense would prefer to have the jury continue to deliberate after they reported that they had agreed on two counts and were hung on two counts, rather than accepting what Petitioner believes was an "offer" from the judge and the prosecutor to accept a mistrial on the two more serious counts and a verdict of guilty on the two less serious counts. (*See* Pet. at 8-10.) However, though the trial transcript confirms that the prosecutor and the judge acknowledged the possibility of accepting the jury's initial findings (*see* State Ct. Rec. II, Ex. 18 at 14-16), Petitioner's suggestion that this was an "offer" that would have permitted him to resolve the case with less prison time had it been accepted – something akin to a plea agreement – misconstrues the circumstances. When the jury first indicated that they had reached agreement on two counts, they did not identify which counts those were nor did they reveal what the agreement was. In other words, while deliberations were ongoing there was simply no way to know that the jury was hung on the two more serious counts and had reached guilty verdicts on the two less serious counts as Petitioner posits. Thus, the suggestion that there

was some sort of concrete offer that Petitioner could have accepted or rejected to his benefit is simply misguided.

Moreover, even if, with the benefit of hindsight, it were reasonable to assume that the jury's initial findings were as Petitioner suggests, *i.e.*, guilty on the two lesser counts and undecided on the two more serious counts, had the jury returned such a verdict, and had a mistrial been declared on the two more serious counts, this would not have terminated Petitioner's potential jeopardy with respect to those more serious counts. A mistrial is not an acquittal, and the prosecutor could therefore have elected to retry Petitioner on the more serious charges, which would not have necessarily been advantageous to Petitioner. Agreeing that the jury should continue to deliberate until it appeared clear that the jury was going to be unable to reach a verdict on all counts was a reasonable strategic choice and, in fact, left open the possibility that Plaintiff might actually be acquitted on some of the charges. Thus, the state courts reasonably rejected this claim. Petitioner's federal habeas petition should therefore be denied with respect to this part of the ineffective assistance of counsel claim asserted in his first ground for relief.

Petitioner also contends that counsel rendered ineffective assistance of counsel when he failed to move for a mistrial after the presiding juror deliberately lied to the trial court about having reached a verdict and presented false verdict forms to the court. (*See* Pet. at 5, 21-26, 31.) However, Petitioner offers no evidence of deliberate misconduct on the part of the presiding juror nor any evidence that the error in returning non-unanimous verdicts was attributable to a lack of impartiality on the part of the presiding juror. Absent some evidence of misconduct and/or bias on the part of the presiding juror, this Court cannot reasonably conclude that counsel rendered ineffective assistance by failing to move for a mistrial on these grounds. Thus,

REPORT AND RECOMMENDATION
PAGE - 13

1    Petitioner's federal habeas petition should also be denied with respect to this part of the

2    ineffective assistance of counsel claim asserted in his first ground for relief.

3                    b.    <u>Trial Testimony</u>

4            Petitioner asserts that defense counsel also rendered ineffective assistance when he

5    coerced Petitioner into not testifying at trial. (*See* Pet. at 44-47.) Petitioner claims that he

6    repeatedly advised counsel he wanted to testify, and counsel repeatedly advised him that trial

7    could "go bad" for him if he testified, and that he would likely be found guilty. (*Id*. at 45-46.)

8    Petitioner maintains that counsel, through his "fear mongering," coerced Petitioner into believing

9    he had better not testify. (*Id*. at 46-47.)

10           The Washington Court of Appeals rejected this portion of Petitioner's ineffective

11   assistance of counsel claim, and explained its conclusion as follows:

12           Gomez argues that his trial counsel provided ineffective assistance of counsel in
             advising him not to testify on his own behalf. Even if this advice is true, the trial
13           court informed Gomez of his right to testify in his own behalf and Gomez
             affirmatively waived that right during a colloquy with the court. Gomez does not
14           show ineffective assistance of counsel.

15   (State Ct. Rec. II, Ex. 10 at 3.)

16           Petitioner fails to demonstrate that this decision of the Court of Appeals constitutes an

17   unreasonable application of *Strickland*. The trial transcript confirms that Petitioner was advised

18   by the trial court of his right to testify in his own behalf, and that he waived that right in open

19   court. (*See* State Ct. Rec. II, Ex. 17 at 345-46.) Petitioner suggests that counsel coached him on

20   how to appropriately respond to the court's inquiry regarding his decision not to testify, though

21   the record is devoid of any evidence that counsel acted improperly. Even assuming counsel did

22   pressure Petitioner not to testify, Petitioner does not identify with any specificity what he would

23   have testified to had he taken the stand at trial and, given the evidence presented at trial of his

REPORT AND RECOMMENDATION
PAGE - 14

1    extensive and sexually explicit communications with the 12 and 13-year-old personas, any

2    suggestion that Petitioner's testimony would have altered the outcome of the trial is speculative

3    at best. Accordingly, Petitioner's federal habeas petition should be denied with respect to this

4    part of the ineffective assistance of counsel claim asserted in his third ground for relief.

c.    Medication

6    Petitioner further asserts that counsel rendered ineffective assistance when he instructed

7    Petitioner to stop taking all of his medications prior to the beginning of trial, including

8    medication for depression. (*See* Pet. at 44, 48.) According to Petitioner, counsel misled him into

9    believing that being on medication during trial would "make him look bad to the jury." (*Id*. at

10   48.) The Washington Court of Appeals rejected this portion of Petitioner's ineffective assistance

11   claim, explaining that Plaintiff had provided no evidence of such advice from counsel, and

12   therefore, no evidence of ineffective assistance of counsel. (State Ct. Rec. II, Ex. 10 at 3.)

13   The record before this Court is likewise devoid of any evidence that Petitioner's trial

14   counsel instructed Petitioner to stop taking his medications. The Court observes as well that

15   Petitioner does not specifically identify in his materials the "5 or 6" medications he suggests he

16   stopped taking upon counsel's advice (*see* Pet. at 48), nor does he explain how this affected the

17   outcome of his trial. The Court of Appeals reasonably rejected this claim and, thus, Petitioner's

18   federal habeas petition should also be denied with respect to this part of the ineffective assistance

19   of counsel claim asserted in his third ground for relief.

d.    Entrapment

21   Finally, Petitioner asserts that counsel rendered ineffective assistance when he refused to

22   present Petitioner's preferred defense of entrapment. (Pet. at 44, 49-50.) Petitioner claims that

23   counsel led him to believe that an entrapment defense was going to be a part of the trial when

REPORT AND RECOMMENDATION
PAGE - 15

counsel did not actually intend to present any such defense. (*Id*. at 49-50.) Petitioner maintains

that a viable entrapment defense was available. (*See id*. at 50.)

The Court of Appeals addressed this claim only briefly, concluding that "Presenting a

defense of general denial rather than the affirmative defense of entrapment was a legitimate

strategic decision, and as such, cannot constitute ineffective assistance of counsel." (State Ct.

Rec. II, Ex. 10 at 2.) The Washington Supreme Court Commissioner, in considering the claim in

relation to Petitioner's request for discretionary review of the Court of Appeals' decision, offered

a more detailed explanation as to why Petitioner was not entitled to relief with respect to this

claim:

> The Court of Appeals sustainably held that defense counsel's decision to present a defense other than an affirmative defense of entrapment was a legitimate strategic decision. Because entrapment is an affirmative defense, the defendant has a burden to show some evidence in support of the defense. *State v. Arbogast*, 199 Wn.2d 356, 371, 506 P.3d 1238 (2022). For entrapment, the defendant must show evidence of inducement and predisposition. *Id*. at 374. Inducement goes beyond simply providing a defendant with the opportunity to commit the offense and is shown by persuasion, fraudulent representations, threats, coercion, harassment, promises of reward, pleas based on need, and sympathy or friendship. *Id*. at 375. Predisposition is shown by evidence establishing that the defendant had no predisposition to commit the crime until the intent was implanted by police. *Id*. at 379.

> In light of these burdens, defense counsel's strategy to forgo an entrapment defense was reasonable and should not be second guessed by the courts. The trial evidence showed that the police created an undercover persona on a dating app, Baddo, posing as a 13-year-old girl named Sam. The app profile included a photograph. The chat log showed that Barajas-Gomez contacted Sam posing as "Jesus," and when Sam said she was 13 years old "Jesus" asked for another photograph. The first suggestion of a romantic interest was initiated by "Jesus" after learning that Sam was only 13, when Jesus twice asked Sam whether she liked older guys. Jesus asked Sam whether she liked to have oral sex and then proceeded to send sexually explicit messages to Sam and asked whether Sam and her 12-year-old friend wanted to have sex. Jesus agreed to meet with Sam at a gas station and Barajas-Gomez was arrested when he arrived at the station and sent Sam a message with a photograph showing that he was at the station. Under these facts, an entrapment defense would have been futile and defense counsel's strategy was reasonable.

(*Id*., Ex. 12 at 2-3.)

REPORT AND RECOMMENDATION
PAGE - 16

Petitioner fails to demonstrate that the conclusions of the state courts with respect to counsel's alleged refusal to present an entrapment defense constitute an unreasonable application of *Strickland*. The decision not to present an entrapment defense was clearly a strategic decision, and Petitioner fails to overcome the presumption that this decision constituted sound trial strategy under the circumstances of his case. Petitioner's federal habeas petition should therefore also be denied with respect to this part of the ineffective assistance of counsel claim asserted in his third ground for relief.

### 2.    *Jury Coercion*

Petitioner asserts in his second ground for relief that the trial judge deliberately interfered with the jury's deliberations in order to coerce the jury into changing their initial verdict to one that would enable the court to impose a harsher sentence. (Pet. at 43.) Petitioner also asserts that the trial court abused its discretion when it failed to declare a mistrial after the presiding juror deliberately lied to the court and presented a false verdict form. (*Id.*)

The Supreme Court has made clear that "[a]ny criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). However, the Supreme Court has also sanctioned the use of a supplemental charge in instances where a jury appears to be deadlocked to encourage further deliberation, a so-called "*Allen* charge." *See id*. at 237. An *Allen* charge is one which "urge[s] the minority to consider the views of the majority, and ask themselves whether their own views [are] reasonable under the circumstances. *See id*.[2] A reviewing court considering a claim that a jury was improperly coerced

---

[2] In *Allen v. United States*, 164 U.S. 492, 501-02 (1896), the Supreme Court upheld a conviction and sentence against the defendant's claim of jury coercion, explaining that: "The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind

REPORT AND RECOMMENDATION

PAGE - 17

must consider a trial court's supplemental charge "in its context and under all the

circumstances." *Id.* (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)).

The Washington Court of Appeals rejected Petitioner's claim that the trial court had

impermissibly interfered with the jury's verdict, concluding that Petitioner had demonstrated no

such interference. (*See* State Ct. Rec. II, Ex. 10 at 3-4.) While the facts set forth in the Court of

Appeals' decision are not entirely accurate, those inaccuracies do not undermine the court's

ultimate conclusion and Petitioner does not demonstrate that that conclusion was contrary to

clearly established federal law.

As described above, on the first day of deliberations the presiding juror sent a question to

the court advising that the jury had reached agreement on two of the four charges, but was hung

on the remaining two charges, and asking for direction on how they should proceed. (State Ct.

Rec. II, Ex. 18 at 10.) The court discussed the matter with counsel and inquired of the presiding

juror whether there a reasonable probability of the jury reaching agreement as to all counts

within a reasonable time. (*See id.* at 10-14.) The presiding juror expressed some uncertainty as to

that prospect but speculated they would not be able to do so. (*Id.* at 14.) The prosecutor thereafter

suggested that they could accept the verdicts on the two counts upon which there was agreement

and declare a mistrial as to the other two counts, and the court acknowledged that was one

possibility. (*Id.* at 15-16.) The court noted that the other possibility was that they could advise

the jury to re-read the instructions and continue to deliberate. (*Id.* at 16.) Petitioner's counsel

thereafter discussed the options with Petitioner and then indicated that their preference was that

the jury continue to deliberate. (*See id.* at 16-17.) The prosecutor agreed and the court advised

---

determination that the verdict shall represent his opinion of the case at that moment, or that he should
close his ears to the arguments of men who are equally honest and intelligent as himself."

REPORT AND RECOMMENDATION
PAGE - 18

1    the jury to return the following morning, re-read the instructions, and continue their

2    deliberations. (*Id*. at 17-18.)

3         Following further deliberations the next morning, the court was advised that the jury had

4    reached verdicts on all counts. (State Ct. Rec. II, Ex. 18 at 22.) Though the verdicts forms

5    indicated that the jury had found Petitioner guilty on all four counts, subsequent polling of the

6    jurors revealed that the verdicts were not unanimous. (*See id*. at 22-24.) After discussing the

7    matter with counsel, the trial court again instructed the jury to re-read the instructions and

8    continue deliberations. (*See id*. at 26-34.) Later that afternoon, the presiding juror advised the

9    court that the jury had reached agreement on three counts, but not on the fourth count, and again

10   requested the court's direction. (*Id*. at 36.) The court again discussed the matter with counsel

11   and concluded that after almost two full days of deliberations it appeared unlikely the jury would be

12   able to reach a verdict on the remaining charge. (*See id*. at 37-39.) The court therefore instructed

13   the jury to complete the verdict forms, indicating on the form pertaining to the count upon which

14   they could not reach agreement, that they could not decide. (*See id*. at 38-39.) After returning the

15   verdicts, the court declared a mistrial as to that charge. (*Id*. at 41-42.)

16        Petitioner does not identify anything obviously coercive in the court's supplemental

17   charges to the jury. Petitioner appears to primarily take issue with the fact that the court allowed

18   deliberations to continue after the jury initially indicated it was hung on two counts and he

19   suggests that the court, in allowing deliberations to continue, was attempting to coerce the jury

20   into returning a verdict on the more serious charges. Petitioner's speculation does not suffice to

21   demonstrate that the trial court acted impermissibly, and the trial transcript is devoid of any

22   evidence from which this Court could reasonably conclude that the trial court's actions in

23

REPORT AND RECOMMENDATION
PAGE - 19

relation to jury deliberations were even remotely coercive. Accordingly, Petitioner's federal habeas petition should be denied with respect to this part of his second ground for relief.

Petitioner also alleges that the presiding juror engaged in misconduct when she represented to the court that the jury had reached a verdict on all charges, and presented verdict forms reflecting those purported verdicts, only for it to be revealed that the verdicts were not unanimous. (*See* Pet. at 20-21, 31, 43.) Petitioner suggests that there were nefarious motives behind the presiding juror's actions that warranted either further inquiry or a mistrial. (*See id*. at 24-26, 31, 43.) The state appellate courts did not directly address this aspect of Petitioner's claim, but it warrants brief discussion by this Court.

It is without question that trial by an impartial jury is fundamental to the fair administration of criminal justice. *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An impartial jury is one that is composed of "jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 470 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). A juror is considered impartial if the juror can set aside any opinion he or she might hold and decide the case solely on the evidence presented at trial. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it."). The burden rests on the defendant to prove a juror was biased resulting in the denial of the right to trial by an impartial jury. *See Wainwright*, 469 U.S. at 423.

While the events that unfolded during jury deliberations were somewhat irregular, nothing in the state court record suggests that those irregularities were attributable to misconduct on the part of the presiding juror, nor does the record demonstrate that the presiding juror was not impartial. Moreover, Petitioner offers no evidence in this proceeding demonstrating that the

REPORT AND RECOMMENDATION
PAGE - 20

1  presiding juror was, in fact, biased. As it is Petitioner's burden to demonstrate that a juror was

2  biased resulting in an unfair trial, and as Petitioner fails to meet this burden, his federal habeas

3  petition should also be denied with respect to this part of his second ground for relief.

4          *3.    Unlawful Sentence*

5        Petitioner alleges in his fourth ground for relief that his constitutional rights were violated

6  when the state courts misapplied state law in imposing sentence. (Pet. at 52-56.) In particular,

7  Petitioner complains that the trial court erroneously applied a seriousness level of XI in imposing

8  sentence with respect to the attempted rape of a child in the second degree charge. (*See id*.)

9  Petitioner contends that because he was convicted of *attempted* second degree rape of a child, it

10  was improper for the trial court to use the seriousness level for the crime of second degree rape

11  of a child to calculate his sentencing range. (*See id*.) Petitioner argues that he was effectively

12  sentenced for a crime he never committed, and that application of a seriousness level of III

13  would have more accurately reflected the conduct underlying the offense. (*See id*.)

14        Federal habeas relief is available only if a petitioner demonstrates he is "in custody in

15  violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(c)(3); *see*

16  *also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A challenge to the state court's application

17  of state sentencing laws does not create a federal question cognizable on federal habeas review.

18  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). To state a cognizable federal habeas claim based

19  on an alleged sentencing error by a state court, a habeas petitioner must show that the asserted

20  sentencing error was "'so arbitrary or capricious as to constitute an independent due process'"

21  violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (citation omitted).

22        The Washington Court of Appeals rejected Petitioner's sentencing claim in his personal

23  restraint proceedings, and explained its conclusion as follows:

REPORT AND RECOMMENDATION
PAGE - 21

> Gomez argues that because his crime was that of attempted second degree rape of a child, the trial court sentenced him under the wrong seriousness level. Second degree rape of a child has a seriousness level of XI. RCW 9.94A.515. Although the fact that the conviction was for attempted second degree rape of a child reduces his standard sentence range by 25%, under RCW 9.94A.595, it does not change his seriousness level.

(State Court Rec. II, Ex. 10 at 4.)

Although Petitioner couches his claim of sentencing error in federal constitutional terms, the claim involves solely the interpretation and application of state sentencing law. Petitioner claims the trial court erred in imposing sentence, but the Court of Appeals made clear that Petitioner was properly sentenced in accordance with Washington law and, thus, that there was no error. This Court must defer to the state courts' interpretation and application of its own law concerning the appropriateness of Petitioner's sentence. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Accordingly, Petitioner's federal habeas petition should be denied with respect to his fourth ground for relief.

### 4.    *Additional Grounds*

Petitioner appears to reference in the lengthy narrative portions of his petition additional potential grounds for relief, including additional claims of ineffective assistance of counsel and trial court error, as well as claims of ineffective assistance of appellate counsel and prosecutorial misconduct. (*See* Pet. at 5-56.) Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases, a federal habeas petition must clearly specify each ground for relief, the facts supporting the ground for relief, and the relief requested. Petitioner has identified only four specific grounds for relief in his petition, some with clearly identified sub-parts, and the Court has addressed those

REPORT AND RECOMMENDATION
PAGE - 22

grounds herein. To the extent Petitioner attempts to raise additional grounds for relief in the

narrative portions of his petition, those additional grounds are improperly pled and should

therefore be denied. *See Vrh v. Ndoh*, 2020 WL 2489464, at *1 (E.D. Cal. May 14, 2020) ("Rule

2(c) requires that each ground for relief be clearly stated, along with providing specific factual

allegations that support the grounds for relief.").

### C.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

district or circuit judge. A certificate of appealability may issue only where a petitioner has made

"a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A

petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Cockrell*, 537 U.S. at 327.

Under this standard, this Court concludes that Petitioner is not entitled to a certificate of

appealability with respect to any of the claims asserted in his petition.

### V.    CONCLUSION

For the reasons set forth above, this Court recommends that Petitioner's petition for writ

of habeas corpus be denied, and that this action be dismissed with prejudice. This Court further

recommends that a certificate of appealability be denied. A proposed Order accompanies this

Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and

served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report

and Recommendation is signed. Failure to file objections within the specified time may affect your

REPORT AND RECOMMENDATION
PAGE - 23

right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 7, 2023**.

DATED this 13th day of June, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 24